IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit New Mexico Corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>GALE A. NORTON, Secretary of the Department of the Interior,<br><br>     Defendant. | No. CIV 01-0258 PK/RLP (ACE) |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Plaintiff Center for Biological Diversity's Motion for Summary Judgment filed April 23, 2001 (Doc. 8), and Defendant Secretary Gale A. Norton's Cross-Motion for Partial Summary Judgment as to Remedy, filed June 4, 2001 (Doc. 16), and the court, being advised fully in the premises, finds that the plaintiff's motion is well taken and should be granted.  The defendant's motion is denied.

I.  Background

The Center for Biological Diversity (the "Center") is a non-profit corporation that "is actively involved in species and habitat protection issues throughout North America." Doc. 1, at 2 (complaint).  Some members of the Center live in "the area in New Mexico

which serves as habitat for the Sacramento Mountains checkerspot butterfly."[1]  Id.  On January 28, 1999, the United States Fish and Wildlife Service (the "Service") received a petition from the Center to list the Sacramento Mountains checkerspot butterfly (Euphydryas anicia [=chalcedona] cloudcrofti) as endangered with critical habitat.  64 Fed. Reg. 72,300, 72,301 (Dec. 27, 1999).  On December 27, 1999, the Service concluded that the petition "present[ed] substantial information that listing . . . may be warranted."  Id. at 72,302.  Pursuant to 16 U.S.C. § 1533(b)(3)(B), the Service was required to make a finding whether listing was warranted by January 28, 2000.[2]  Although the Service has prepared a draft, the Service has not yet published a twelve-month finding.[3]  Doc. 17, att. 1, at ¶ 35.   After notifying the Secretary of its intent to sue, Doc. 1, at ¶ 14, the Center filed suit in this court against Defendant Secretary Norton (the "Secretary") for declaratory and injunctive relief.

---

[1]  The butterfly lives near the Village of Cloudcroft, in Otero County, New Mexico.  64 Fed. Reg. 72,300, 72,301 (Dec. 27, 1999).

[2]  This finding is hereinafter referred to as the "twelve-month finding."  The Secretary is required to "promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based."  16 U.S.C. § 1533(b)(3)(B).

[3]  Gary Frazer, Assistant Director for Endangered Species for the Service stated: "The proposed rule was drafted by the Field Office and submitted to the Regional Office for review and approval.  However, during this time the Service determined that any remaining FY 2000 funds would be needed to address court orders and settlement agreements and had to cease work on all other listing work, including the Sacramento Mountains checkerspot butterfly."  Doc. 17, att. 1, at ¶ 35.

The Center now moves for summary judgment. The Center argues that the Secretary has violated § 1533(b)(3)(B) and that she should be ordered to issue a twelve-month finding within 30 days. Doc. 8, at 3-4. In her opposition to the Center's motion, the Secretary argues that the Center has failed to satisfy its burden of establishing standing. Doc. 17, at 9-10. In the alternative, the Secretary concedes that she has violated § 1533(b)(3)(B), but, in a cross motion for partial summary judgment as to remedy, argues that she should have until January 15, 2002 to complete the twelve-month finding.[4] Id. at 20-25.

## II. Discussion

A.   Standing

The Secretary asserts that the Center "has not supplied any affidavits or other supporting evidence necessary to meet their burden at the summary judgment stage of establishing standing." Id. at 10. The Center, however, was under no such obligation because the Secretary did not move for summary judgment on the issue of the Center's standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The Center bears the burden of proving standing only "[i]n response to a summary judgment motion .

---

[4] The Secretary has withdrawn her argument that Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999), "should not be considered binding precedent here on the issue of whether the ESA citizen suit provision or APA section 706(1) supplies the governing remedial standard . . . ." Doc. 20, at 1 (notice of withdrawal of argument).

. . ." Id. (emphasis added).   There is no cross motion for summary judgment on standing pending.

B.     Remedy

The Secretary concedes that she has failed to comply with the mandate of § 1533(b)(3)(B).  Doc. 17, at 10.  Accordingly, the Center is entitled to summary judgment.  Fed. R. Civ. P. 56(c).  The remaining issue is how soon the Secretary should be required to issue the twelve-month finding.  The Center requests that the Secretary be required to act within 30 days of this court's order; Doc. 8, at 4; the Secretary requests that she have until January 15, 2002.  Doc. 17, at 21.

In Forest Guardians, the Tenth Circuit held that it was required to compel then Secretary Babbitt to designate critical habitat for the Rio Grande silvery minnow.  174 F.3d 1178, 1184, 1187 (10th Cir. 1999).   The court remanded the case to the district court "to order the Secretary to [act] as soon as possible . . . ."  Id. at 1193 (emphasis in original).  No consideration was to be given to "the Secretary's other priorities under the ESA."[5]  Id.  Accordingly, under Forest Guardians, the Secretary must complete the twelve-month finding as soon as possible.

---

[5] On remand, the district court ordered the Secretary to publish a final critical habitat designation within 30 days.  Order on Remand, Forest Guardians v. Babbitt, No. CIV 97-453 (D.N.M. filed Feb. 22, 1999).  The court later granted the Secretary an additional ninety days because the Secretary needed "additional time to comply with the various requirements for proper designation."  Memorandum Opinion and Order, Forest Guardians v. Babbitt, No. CIV 97-453, at 3 (D.N.M. filed March 22, 1999).

In setting a deadline, Forest Guardians forbids our consideration of the Secretary's budgetary crisis caused by judicially-imposed deadlines in other cases.[6]  174 F.3d at 1193.  The Secretary argues that consideration of these deadlines is appropriate in imposing a deadline in this case because, unlike then Secretary Babbitt's decision not to designate critical habitat in Forest Guardians, the Secretary lacks discretion to comply or not comply with the judicially-imposed deadlines.  Doc. 17, at 20-21.  The court disagrees.  The judicially-imposed deadlines in other cases flow from the inadequacy of ESA or NEPA-mandated action or the Secretary's decision not to take action at all.  Stipulated Settlement Agreement, Center for Biological Diversity v. Norton, No. CIV 00-1537 (D.N.M. filed April 24, 2001)[7]; Memorandum Opinion and Order, Middle Rio Grande Conservancy District v. Babbitt, No. CIV 99-870, 872, 1445 (D.N.M. filed Nov. 21, 2000);  Stipulated Settlement Agreement, Southwest Center for Biological Diversity

---

[6] Mr. Frazer states that Region 2, of which New Mexico is a part, was allocated $263,427 for fiscal year 2001.  Doc. 17, att. 1, at ¶¶ 37-38.  "The majority of these funds have been or will be expended to comply with court orders and court-ordered settlement agreements."  Doc. 23, at ¶ 3 (Second Declaration of Gary Frazer). $30,000 has been spent on a final listing decision for 9 Bexar County, Texas invertebrates.  Id. at ¶ 4.  Mr. Frazer asserts that "[a]ll remaining FWS Region 2 funds for FY 2001 are needed at this time to work on the re-designation of critical habitat for the Rio Grande silvery minnow pursuant to the court's remand order in Middle Rio Grande Conservancy District v. Norton . . . ."  Id. at ¶ 7.  Accordingly, Mr. Frazer asserts that work on the twelve-month finding for the butterfly can resume no earlier than October 1, 2001, the first day of fiscal year 2002.  Doc. 17, att. 1, at ¶ 46.

[7] The listing action taken by the FWS in Center for Biological Diversity was not required by the settlement agreement, but "was taken to facilitate settlement discussions . . . ."  Doc. 23, at ¶ 4.

v. Babbitt, No. CIV 99-D-1118 (D.Colo. filed April 14, 2000);  Memorandum Opinion and Order, at 4 Southwest Center for Biological Diversity v. Babbitt, No. CIV 98-322 (D.N.M. filed March 16, 2000);  Memorandum Opinion and Order, Southwest Center for Biological Diversity v. Dep't of Interior, No. CIV 99-519 (D.N.M. filed March 13, 2000); Stipulated Settlement Agreement, Center for Biological Diversity v. Babbitt, No. CIV C99-3202-SC (N.D.Cal. filed Feb. 16, 2000); Order, Defenders of Wildlife v. Babbitt, No. CIV 96-2695, 97-777 (D. D.C. filed Feb. 8, 2000).  Though one step removed, the deadlines are a product of the Secretary's discretionary actions.[8]  See e.g. Order, Middle Rio Grande Conservancy District, No. CIV 99-870, 872, 1445 at 3 (D.N.M. filed April 25, 2001) ("I see the difficulties which the United States Fish and Wildlife Service now encounters as those of its own making.").  It also bears noting that the Secretary's financial predicament may be, in part, the product of its own making.  In the Effect Statement to the Conference Managers regarding the Fiscal Year 2001 Interior Appropriations Bill, the Department of Interior admitted that "the listing program is not proposed at a level that would allow the Service to meet all of the Act's requirements and deadlines."  Doc. 17, att. 1, ex. 1, at 2.

The Secretary asserts that it will take approximately three-and-a-half months to complete the twelve-month finding.  This estimate is based upon the time necessary for:

---

[8] Thus, the court disagrees with the court's analysis in Biodiversity Legal Foundation v. Badgley, to the extent that the Biodiversity court considered court-imposed deadlines in imposing a deadline in that case.  1999 WL 1042567, at *7 n.8 (D. Or. Nov. 17, 1999).

(1) the Field Office's completion of a proposed listing rule and critical habitat description; Doc. 17, att. 1, ¶ 47, (2) the Field Office's "review [of] the most recent survey information and any new information about the threats faced by the species;" id. at ¶ 36, (3) the Regional Office and Washington Office's review of the Field Office's work, id., and (4) an economic analysis for the proposed critical habitat designation.  Doc. 17, at 23.

A proposed twelve-month finding was drafted by the Field Office some time in 2000.  Id., att. 1, at ¶ 35.  Furthermore, economic analysis for proposed critical habitat is to occur after critical habitat designation is proposed.  50 C.F.R. § 424.19 (2001); see also Doc. 17, att. 1, at ¶ 31.  Therefore, the court finds that time is required only to (1) supplement the already-drafted proposed twelve-month finding with new information on the butterfly and its habitat, and (2) have the twelve-month finding reviewed.  Thirty days is sufficient to accomplish these two tasks.  Because a proposed finding has already been drafted, this deadline will not, as the Secretary contends, sacrifice the substance of the twelve-month finding.

The court recognizes that the Secretary is caught in a quandary.  Without sufficient funding or a change in the mandatory tasks required by Congress, the Service cannot fulfill the myriad of mandatory listing duties.  Id., att. 1, at ¶¶ 6-13.  As a result, the Service has violated the ESA on numerous occasions.  Lawsuits follow, requiring the Service to spend a greater portion of its already insufficient budget on litigation support, id. at ¶¶ 15-17, including the plaintiffs' attorneys fees and costs in many instances.  In

fact, the Secretary has allocated all of the fiscal year 2001 listing budget for Region 2 to compliance with existing court orders and settlement agreements.  Id. at ¶ 15.  More lawsuits will inevitably follow unless Congress recognizes the problem it has created and acts to solve the problem, either by appropriating additional funds, amending the time limits or by giving the Secretary the discretion to prioritize her workload.  Until Congress does, tax dollars will be spent not on protecting species, but on fighting losing battle after losing battle in court.  The solution to this problem lies not in the courts, but with Congress.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, and DECREED that the Plaintiff Center's Motion for Summary Judgment, filed April 23, 2001 (Doc. 8), is granted;

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the Secretary's Cross-Motion for Partial Summary Judgment as to Remedy, filed June 4, 2001 (Doc. 16), is denied;

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the Secretary shall complete and submit for publication to the Federal Register a twelve-month finding for the Sacramento Mountains checkerspot butterfly within thirty days of the date of entry of the Judgment for Injunctive Relief and Costs filed contemporaneously with this memorandum opinion and order.

DATED this 31st day of July 2001, at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting By Designation

Counsel:

Matt Kenna and Geoff Hickcox, Kenna & Hickcox, P.C., Durango, Colorado, for Plaintiff.

Seth M. Barsky, Assistant Section Chief, Wildlife & Marine Resources Section, Environmental & Natural Resources Division, John C. Cruden, Acting Assistant Attorney General, Jean E. Williams, Section Chief, U.S. Department of Justice, Washington, D.C., and Norman C. Bay, United States Attorney, and John W. Zavitz, Assistant United States Attorney, Albuquerque, New Mexico, for Defendant.